*756 OPINION.
Lansdon:
In the appeal the taxpayer asserts that the Commissioner erred: (1) In not allowing sufficient depreciation as deduction from gross income; (2) in denying that the amount of $11,423.02 charged off the taxpayer’s books in 1920 was a bad debt within the meaning of the statute; (3) in disallowing a loss of $786.62 resulting from the purchase and partial abandonment of a dredge boat; and (4) in denying that any part of $1,862.82, disallowed as personal expenses, represented allowable deductions from taxable income.
At the hearing the counsel for the Commissioner and the representative of the taxpayer agreed and stipulated that the depreciation on plant and equipment for the year 1920 was $8,891, and therefore no further consideration of that point is necessary.
The oral and documentary evidence offered at the hearing proved that the taxpayer advanced $11,423.02 to J. D. Asher between the dates of June 30, 1919, and December 31, 1920. The only security the taxpayer ever had for such advances was a deed of trust or third mortgage on The Thornton Plantation bought by Asher for $21,699.98 on February 20, 1919, upon which there were prior first and second mortgages of $5,000 and $16,669.98, respectively.
The evidence offered at the hearing shows that on December 31, 1920, and for some time prior thereto, Asher was insolvent. Except for whatever his equity in The Thornton Plantation was worth he *757 had no resources. The taxpayer was an operator in real estate and was well acquainted with land values in that locality in 1920. In December of that, year he made an investigation to ascertain the value of the The Thornton Plantation and became convinced that the property could not be sold, at that time, for a price sufficient to pay more than half of the aggregate amount of debts against it secured by the first and second mortgages. In the light of all the facts disclosed by the evidence, the Board is of the opinion that the taxpayer's claim against Asher was a bad debt because the debtor was insolvent and the security worthless. The amount of $11,423.02 should be allowed as a deduction from gross income of the taxpayer for 1920.
The evidence adduced at the hearing convinces the Board that the only useful value salvaged from the dredge boat bought by the taxpayer in 1917 was in the engine, which was removed and carried on the assets account at $600. All expectation of realizing anything from the sale of the other parts of the boat as junk was abandoned in 1920 and the remaining cost, less depreciation which, correctly computed, was $386.05 at that date, was a proper deduction as a business loss from the income of the taxpayer for the year ended December 31, 1920.
The taxpayer was in business as an individual during the year 1920. Whether he paid business expenses from his personal bank account or from the bank account of his business is wholly immaterial. In either case he is entitled to deduct actual business expenses from his gross income as reported for Federal income tax purposes. In the schedule of expenses submitted by the taxpayer at the hearing of the appeal, the amounts of $471.86 interest; $57.03 insurance on rental property; $135 repairs on rental property; and $275 agreed to by the parties as the correct depreciation on an automobile used for business purposes, — are legal deductions from the gross income of the taxpayer for 1920, and should be allowed. The amount of $400.44, deducted as traveling expenses, was not supported by sufficient evidence to convince the Board that it was incurred entirely for business purposes and is disallowed. The evidence discloses that the taxpayer kept his accounts on a receipts and disbursements basis. The receipted tax bills offered in evidence show on their face that the payments of taxes for which deduction is claimed were made in 1921. The amount involved, $398.49, therefore, is not deductible from gross income for 1920.